Arthur D. Levy (SBN 95659)
LEVY, RAM & OLSON LLP
639 Front St., 4th Floor
San Francisco, CA 94111
Tel: (415) 433-4949

Attorneys for Plaintiffs
CHARLES BEELER and REX VENTURES, LLC

ORIGINAL
FILED

AUG 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO

CHARLES BEELER and REX VENTURES, LLC

        Plaintiffs,

v.

BANK OF AMERICA, N.A.,

        Defendant.

No. _____

CV 08 3739 EMC

**COMPLAINT**

Charles Beeler and Rex Ventures, LLC complain against Bank of America, N.A. and allege as follows:

<u>PARTIES</u>

1.    Plaintiff Charles Beeler ("Beeler") is an individual who resides in Menlo Park, California. Beeler is a member and the Manager of plaintiff Rex Ventures, LLC.

2.    Plaintiff Rex Ventures, LLC is a limited liability company organized under the laws of the State of Delaware whose principal place of business is Menlo Park, California.

3.    Defendant Bank of America, N.A. ("Bank of America" or the "Bank") is a national banking association organized under the laws of the United States and not incorporated under the laws of any state. Bank of America's principal place of business is Charlotte, North

COMPLAINT

1    Carolina.

2                                   JURISDICTION

3         4.      This is a civil action where the matter in controversy exceeds the sum or value of

4    $1,000,000 (One Million Dollars) exclusive of interest, attorneys' fees, expenses and costs, and is

5    between citizens of different States.  This Court therefore has subject matter jurisdiction pursuant

6    to 28 U.S.C § 1332(a)(1).

7         5.      This is a civil action that includes a claim or claims arising under the Expedited

8    Funds Availability Act, 12 U.S.C. §§ 4001 *et seq.*, and regulations promulgated thereunder, 12

9    C.F.R. §§ 229.30 *et seq.*  This Court therefore also has subject matter jurisdiction pursuant to 28

10   U.S.C § 1331.

11        6.      The Court has supplemental jurisdiction over the accompanying state law claims

12   pursuant to 28 U.S.C. § 1367(a) because they are so related to the claims in the action within

13   such original jurisdiction that they form part of the same case or controversy under Article III of

14   the United States Constitution.

15                                      VENUE

16        7.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because Bank of

17   America is subject to personal jurisdiction in this judicial district, and is therefore deemed to

18   reside there for purposes of venue under 28 U.S.C. § 1391(c).

19        8.      Venue is also proper in this judicial district under 28 U.S.C. § 1391 because a

20   substantial part of the events or omissions giving rise to the claims occurred in Menlo Park, San

21   Mateo County, California.

22        9.      Venue is proper in this division of this judicial district pursuant to Local Rule 3-

23   2(d) because this action arose in Menlo Park, San Mateo County, California.

24                                GENERAL ALLEGATIONS

25        10.     On September 4, 2007, Beeler opened deposit accounts as follows for himself and

26   Rex Ventures with Bank of America at its Sand Hill Road branch location in Menlo Park,

27   California.

28        11.     On that day, Beeler deposited a $25,000.00 Wells Fargo cashier's check to open

COMPLAINT                                                                              -2-

Bank of America checking account no. 11301-66173 in his own name.

12.     On that day, he also deposited a $10,000.00 Wells Fargo cashier's check to open Bank of America checking account no. 11300-66503 for and in the name of Rex Ventures.

13.     On that day, he also deposited a $185,220.00 check drawn by a third party on another Bank of America account to open Bank of America money market account no. 11300-66546 in his own name.

14.     On September 6, 2007, after receiving confirmations from the Bank that the $185,220.00 check had cleared, Beeler asked for, and the Bank issued him, a cashier's check for $175,000.00. This transaction also took place at the Sand Hill Road branch of the Bank. On the same day, Beeler applied the cashier's check against the balance of his outstanding line of credit at Silicon Valley Bank.

15.     On September 8, 2007, Beeler deposited in account no. 11300-66503 a check for $308,125.00 drawn by a third party on another Bank of America account. This transaction took place at the Bank of America Santa Cruz Avenue Branch in Menlo Park.

16.     On September 10, 2007, Beeler deposited in account no. 11300-66503 a check for $557,910.00 drawn by a third party on another Bank of America account. This transaction also took place at the Bank of America Santa Cruz Avenue Branch in Menlo Park.

17.     On September 10 & 11, 2007, Beeler received multiple confirmations from Bank of America that the checks for $308,125.00 and $557,910.00 had cleared.

18.     Plaintiffs are informed and believe and on that basis allege that Bank of America finally settled and paid the checks for $185,220.00, $308,125.00, and $557,910.00. Because the Bank finally settled and paid these checks, plaintiffs were entitled to credits for them in their accounts.

19.     Each of these checks was drawn by another Bank of America customer on another account at the Bank.  Such a transaction is commonly referred to as an "on us" transaction. Because Bank has immediate access to its own data and records establishing all balances and other information needed to clear and complete on us transactions, the Bank does not rely on any

1    inter-bank confirmation or clearing mechanism to process on us items.

2            20.     The Bank finally paid and settled the three on us checks by:

3            a.      orally and electronically confirming to Beeler that these checks had cleared;

4            b.      issuing the $175,000.00 cashier's check to Beeler;

5            c.      verifying that there were sufficient funds in the drawer's Bank of America account

6    to cover each of these checks and communicating that verification to Beeler;

7            d.      on information and belief, debiting the drawer's account for these checks and

8    crediting plaintiffs' accounts for the same amounts;

9            e.      failing to return checks to Beeler in compliance with law;

10           f.      failing to exercise any revocation rights the Bank had within the time required by

11   law, to the extent Bank may only conditionally have settled or paid these items and had any such

12   right of revocation; and

13           g.      other actions and failures to act rendering the payment and settlement of these

14   checks final.

15           21.     On September 11, 2007, an employee of the Bank informed Beeler that Bank of

16   America was closing his accounts.

17           22.     Beeler was surprised and concerned.  The same bank employee put Beeler in

18   touch with Christina Nguyen, a manager at the Sharon Heights Bank of America branch in Menlo

19   Park.

20           23.     Beeler then drove to Sharon Heights to speak with Nguyen.  Beeler summarized

21   his transactions with the Bank for her.  She confirmed that the Bank was closing his accounts but

22   did not explain why.  She said that she would try to convince the Bank not to close his accounts,

23   but that he had to put funds back into the accounts that day in order to make the $175,000.00

24   cashier's check good.   She warned him that he had to do this or there would be adverse personal

25   consequences for his credit and reputation as a banking customer.

26           24.     Unbeknownst to Beeler at that time, Bank of America had stopped payment on the

27   $75,000.00 cashier's check.  This caused Silicon Valley Bank to reject the cashier's check, and

28   Bank of America never paid it.

---

COMPLAINT                                                                                          -4-

25.     Unsettled by Nguyen's warnings and wanting to exercise good faith and responsibility in this situation, Beeler returned to the Sharon Heights branch later that same day, September 11, and provided Nguyen a Silicon Valley Bank cashier's check for $160,000.00.

26.     Bank of America negotiated this $160,000.00 cashier's check and received the full amount of this check from Silicon Valley Bank.

27.     Bank of America consolidated all three of plaintiffs' accounts. As of September 11, 2007, plaintiffs had deposited a total of $195,000.00 in certified funds in the three Bank of America accounts. Except for the $175,000.00 cashier's check that Bank of America refused to pay, plaintiffs made no withdrawals from these accounts. In addition to the $195,000.00 in certified funds, the on us checks Beeler deposited in the Bank of America accounts totaled $1,051,255.00, bringing the total deposited items to $1,246,255.00.

28.     Sometime in late September 2007, the Bank mailed Beeler "a Check representing the balance" on plaintiffs' three accounts of $19,930.11 as settlement of the accounts.

29.     Plaintiffs then attempted to resolve their dispute and claims with the Bank informally and without litigation, but the Bank refused to do so.

FIRST CLAIM

Claim for Violations of 12 U.S.C. §§ 4001 <em>et seq.</em> and Associated Regulations

30.     Plaintiffs fully incorporate the preceding allegations by reference in this claim.

31.     Bank of America violated section 229.38 of title 12 of the Code of Federal Regulations by failing to exercise ordinary care and failing to act in good faith as required by 12 C.F.R. §§ 229.30 <em>et seq.</em>, including but not limited to sections 229.30, 229.34, and 229.36, in paying, processing, and crediting the checks relating to plaintiffs' accounts.

32.     Notwithstanding the Bank's final payment and settlement of the checks as alleged above, Bank of America:

a.     On information and belief, reversed credits to plaintiffs' accounts for deposited on us checks that the Bank had previously confirmed had cleared;

b.     On information and belief, reversed, or in the alternative failed to apply, credits to plaintiffs' accounts for deposited on us checks for which the Bank confirmed that there were

1 | sufficient funds in the drawer's account;

2 |     c.    Illegally placed holds on certified checks deposited to plaintiffs' accounts;

3 |     d.    Wrongfully stopped payment and refused to pay the Bank's $175,000.00 cashier's
4 | check;

5 |     e.    Concealed from Beeler that the Bank had stopped payment on the $175,000.00
6 | cashier's check, while falsely and in bad faith representing to him that the Bank had in fact paid
7 | the cashier's check by asking him to make the cashier's check good, thereby inducing him to
8 | deposit another $160,000.00 into the accounts; and

9 |     f.    Returning a mere $19,930.11 against deposits of certified funds totaling
10 | $195,000.00 and deposits net of the $175,000.00 cashier's check totaling $1,071,255.00, when
11 | there were no other debits except miscellaneous fees and items totaling $69.89.

12 |     33.    As a direct and proximate result of these violations, plaintiffs have been damaged
13 | in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will prove at trial,
14 | including but not limited to:

15 |     a.    funds on deposit in their Bank of America accounts that plaintiffs own and to
16 | which they are entitled by law;

17 |     b.    loss of interest and opportunity on such deposits;

18 |     c.    funds represented by the $175,000 cashier's check that plaintiffs own and to
19 | which they are entitled by law;

20 |     d.    loss of interest and opportunity on the funds represented by the $175,000.00
21 | cashier's check;

22 |     e.    attorney's fees and costs and expenses of litigation in order to recover the deposits
23 | and other funds that plaintiffs own and to which they are entitled by law;

24 |     f.    incidental, consequential, and other damages as plaintiffs will prove at trial.

25 |     34.    Plaintiffs also seek statutory damages pursuant to 12 U.S.C. § 4010(a)(2)(A) and
26 | costs of the action, together with a reasonable attorney's fee as determined by the court, pursuant
27 | to 12 U.S.C. § 4010(a)(3).

28 |

## SECOND CLAIM

### Claim for Violations of the Uniform Commercial Code

35.  Plaintiffs fully incorporate the preceding allegations by reference in this claim.

36.  By acting and failing to act as alleged above, Bank of America failed to comply with the requirements of Division 4 of the California Commercial Code, including but not limited to sections 4215 and 4301, and failed to exercise ordinary care and failing to act in good faith as required by Commercial Code section 4103, in paying, processing, and crediting the checks relating to plaintiffs' accounts.

37.  As a direct and proximate result of these violations, plaintiffs have been damaged in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will prove at trial, as more particularly alleged above.

## THIRD CLAIM

### Common Law Conversion

38.  Plaintiffs fully incorporate the preceding allegations by reference in this claim.

39.  Plaintiffs were the owners of, had title to, and had the right to immediate possession of and control over specifically identifiable sums of money in the form of the three on us checks plaintiffs deposited to their Bank of America accounts and the $175,000.00 cashier's check.

40.  Bank of America converted plaintiffs' property by wrongfully exercising dominion and control over and actually interfering with plaintiffs' ownership of and right to possession of the sums of money on deposit in their accounts. The Bank did so by acting and omitting to act as alleged above, by denying and/or reversing the credits to plaintiffs' accounts for the three on us checks, by refusing to pay plaintiffs the true and correct balances on their accounts upon account closing, and by stopping payment on the $175,000.00 cashier's check.

41.  Bank of America violated California Commercial Code section 3411(b) by wrongfully refusing to pay the cashier's check.

42.  Plaintiffs have made due demand on the Bank for the return of their property and by service of this complaint again demand return of their property.

43.     As a direct and proximate result of the Bank's conversion, plaintiffs have been damaged in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will prove at trial, as more particularly alleged above.

44.     Bank of America acted fraudulently, maliciously, and oppressively and should be assessed punitive damages.

### FOURTH CLAIM

Breach of Contract and Implied Covenant of Good Faith

45.     Plaintiffs fully incorporate the preceding allegations by reference in this claim.

46.     On September 4, 2007, plaintiffs and the Bank of America entered a contractual depositor-bank relationship.

47.     Bank of America orally and expressly agreed to clear checks from other Bank of America accounts in one day if there was a sufficient balance to pay the check in the drawer's account. This term became part of the contact.

48.     A covenant of good faith and fair dealing was implied in the contract, under which Bank of America agreed to act in good faith, honestly, and fairly in paying, processing, and crediting the checks relating to plaintiffs' Bank of America accounts.

49.     Plaintiffs have timely and duly complied with all conditions precedent required by the contract.

50.     By acting and failing to act as alleged above, Bank of America breached the contract by reversing, or in the alternative failing and refusing to apply, credits for checks from other Bank of America accounts in one day when there was a sufficient balance to pay the check in the drawer's account.

51.     By acting and failing to act as alleged above, Bank of America otherwise failed to act in good faith in paying, processing, and crediting the checks relating to plaintiffs' accounts, including the $175,000.00 cashier's check.

52.     As a direct and proximate result of these breaches of contract, plaintiffs have been damaged in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will prove at trial, as more particularly alleged above.

1

### FIFTH CLAIM

2

### Negligence

3    53.    Plaintiffs fully incorporate the preceding allegations by reference in this claim.

4    54.    By virtue of their depositor-bank relationship, federal regulations and the

5    Commercial Code and California common law, Bank of America owed plaintiffs a duty of due

6    care in paying, processing, and crediting the checks relating to plaintiffs' accounts.

7    55.    By acting and failing to act as alleged above, Bank of America negligently failed

8    to exercise due care in paying, processing, and crediting the checks relating to plaintiffs'

9    accounts, including the $175,000.00 cashier's check.

10    56.    As a direct and proximate result of the Bank's negligence, plaintiffs have been

11    damaged in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will

12    prove at trial, as more particularly alleged above.

13

### SIXTH CLAIM

14

### By Plaintiff Beeler Only

15    Violations of the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*)

16    57.    Plaintiffs fully incorporate the preceding allegations by reference in this claim.

17    58.    Beeler opened his account with Bank of America for personal, family, and

18    household purposes.

19    59.    Bank of America agreed to provide Beeler banking and deposit services in

20    connection with his account.

21    60.    Bank of America has violated and continues to violate the California Consumer

22    Legal Remedies Act (the "CLRA") by using deceptive representations in connection with these

23    services; misrepresenting that these services have characteristics, uses, and benefits that they do

24    not have; by advertising its services with intent not to sell them as advertised; and by

25    misrepresenting that transactions confer or involve rights, remedies, or obligations which they do

26    not have or involve, or which are prohibited by law.

27    61.    Bank of America has committed and continues to commit these CLRA violations

28    by the acts and omissions alleged above, specifically including but not limited to:

---

a.     representing that the Bank will clear checks from other Bank of America accounts in one day if there is a sufficient balance to pay the check in the drawer's account;

b.     representing online and otherwise that the checks plaintiff and other customers deposit in their accounts have cleared;

c.     stopping payment on and wrongfully refusing to pay cashier's checks;

d.     representing to Beeler that he needed to deposit funds in his account in order to cover the $175,000.00 cashier's check when the Bank had previously and unbeknownst to Beeler stopped payment on it; and

e.     otherwise as will be shown at trial.

62.     Beeler seeks orders enjoining these violations of the CLRA and awarding him attorney's fees, costs and expenses as allowed by law.

## RELIEF SOUGHT

63.     A money award in favor of plaintiffs against Bank of America for an amount exceeding $1,000,000.00 as compensatory relief against Bank of America on account of the damages alleged above, including prejudgment interest.

64.     A further money award in favor of plaintiffs against Bank of America on account of statutory damages pursuant to 12 U.S.C. § 4010(a)(2)(A).

65.     A further money award in favor of plaintiffs against Bank of America on account of punitive damages.

66.     A further money award in favor of plaintiffs against Bank of America on their attorney's fees, expenses, and costs of suit in this action.

67.     An order enjoining Bank of America from continuing to violate the CLRA as alleged above.

68.     Leave to amend this Complaint to state plaintiffs' claims more fully.

69.     Other and further relief as is just and proper.

LEVY, RAM & OLSON LLP

DATED:  August 5, 2008     by: _Arthur D. Levy_
                          Arthur D. Levy
                          Attorneys for Plaintiffs
                          CHARLES BEELER and REX VENTURES, LLC