Arthur D. Levy (SBN 95659)
LEVY, RAM & OLSON LLP
639 Front St., 4th Floor
San Francisco, CA 94111
Tel: (415) 433-4949

Attorneys for Plaintiffs
CHARLES BEELER and REX VENTURES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO

| | |
|---|---|
| CHARLES BEELER and REX VENTURES, LLC<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | No. C 08 03739 PJH<br><br>STIPULATION AND [P~~ROPOSE~~D] ORDER ALLOWING PLAINTIFFS LEAVE TO FILE FIRST AMENDED COMPLAINT |

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and the Pretrial Schedule established by the Court's Case Management and Pretrial Order filed December 14, 2008, plaintiffs CHARLES BEELER and REX VENTURES, LLC, on the one hand, and defendant BANK OF AMERICA, N.A., on the other, through their respective counsel, hereby stipulate that plaintiffs may file the attached proposed First Amended Complaint, and request that the Court so expressly allow.

The Pretrial Order allows the parties to file a stipulation to amend no later than 90 days before the fact discovery cutoff. Because the fact discovery cutoff is May 27, 2009, the last day for filing this stipulation is February 26, 2009.

---

Case No. C 08-03739 EMC - STIPULATION AND [PROPOSED] ORDER ALLOWING PLAINTIFFS LEAVE TO FILE FIRST AMENDED COMPLAINT

|   |   |   |
|---|---|---|
| 1 | | LEVY, RAM & OLSON LLP |
| 2 | DATED: February 24, 2009 | by: /s/_____ |
| 3 | | Arthur D. Levy |
| | | Attorneys for Plaintiffs |
| 4 | | CHARLES BEELER and REX VENTURES, LLC |

SEVERSON & WERSON
A Professional Corporation

DATED: February 24, 2009    by: /s/_____
Jan T. Chilton
Attorneys for Defendant
BANK OF AMERICA, N.A.

ORDER

Defendant having consented pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, and this Stipulation being timely filed in accordance the Pretrial Schedule established by the Case Management and Pretrial Order, filed December 14, 2008, plaintiffs are hereby allowed leave to file the attached First Amended Complaint. Defendant shall respond to the First Amended Complaint within twenty (20) days after entry of this Order.

DATED: February 26, 2009

_____
United States District Judge

IT IS SO ORDERED
Judge Phyllis J. Hamilton

F:\Docs\1122-01\Pleadings\Stip Complaint Amendment.doc

Arthur D. Levy (SBN 95659)
LEVY, RAM & OLSON LLP
639 Front St., 4th Floor
San Francisco, CA 94111
Tel:  (415) 433-4949

Attorneys for Plaintiffs
CHARLES BEELER and REX VENTURES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO

| | |
|---|---|
| CHARLES BEELER and REX VENTURES, LLC<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | No.  C 08 03739 PJH<br><br>**FIRST AMENDED COMPLAINT** |

     Charles Beeler and Rex Ventures, LLC complain against Bank of America, N.A. and allege as follows:

PARTIES

     1.     Plaintiff Charles Beeler ("Beeler") is an individual who resides in Menlo Park, California.  Beeler is a member and the Manager of plaintiff Rex Ventures, LLC.

     2.     Plaintiff Rex Ventures, LLC is a limited liability company organized under the laws of the State of Delaware whose principal place of business is Menlo Park, California.

     3.     Defendant Bank of America, N.A. ("Bank of America" or the "Bank") is a national banking association organized under the laws of the United States and not incorporated under the laws of any state.  Bank of America's principal place of business is Charlotte, North

Carolina.

## JURISDICTION

4. This is a civil action where the matter in controversy exceeds the sum or value of $1,000,000 (One Million Dollars) exclusive of interest, attorneys' fees, expenses and costs, and is between citizens of different States. This Court therefore has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a)(1).

5. The Court has supplemental jurisdiction over the accompanying state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

6. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Bank of America is subject to personal jurisdiction in this judicial district, and is therefore deemed to reside there for purposes of venue under 28 U.S.C. § 1391(c).

7. Venue is also proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in Menlo Park, San Mateo County, California.

8. Venue is proper in this division of this judicial district pursuant to Local Rule 3-2(d) because this action arose in Menlo Park, San Mateo County, California.

## GENERAL ALLEGATIONS

9. On September 4, 2007, Beeler opened deposit accounts as follows for himself and Rex Ventures with Bank of America at its Sand Hill Road branch location in Menlo Park, California.

10. On that day, Beeler deposited a $25,000.00 Wells Fargo cashier's check to open Bank of America checking account no. 11301-66173 in his own name.

11. On that day, he also deposited a $10,000.00 Wells Fargo cashier's check to open Bank of America checking account no. 11300-66503 for and in the name of Rex Ventures.

FIRST AMENDED COMPLAINT                                                                                    -2-

12. On that day, he also deposited a $185,220.00 check drawn by a third party on another Bank of America account to open Bank of America money market account no. 11300-66546 in his own name.

13. On September 6, 2007, after receiving confirmations from the Bank that the $185,220.00 check had cleared, Beeler asked for, and the Bank issued him, a cashier's check for $175,000.00. This transaction also took place at the Sand Hill Road branch of the Bank. On the same day, Beeler applied the cashier's check against the balance of his outstanding line of credit at Silicon Valley Bank.

14. On September 8, 2007, Beeler deposited in account no. 11300-66503 a check for $308,125.00 drawn by a third party on another Bank of America account. This transaction took place at the Bank of America Santa Cruz Avenue Branch in Menlo Park.

15. On September 10, 2007, Beeler deposited in account no. 11300-66503 a check for $557,910.00 drawn by a third party on another Bank of America account. This transaction also took place at the Bank of America Santa Cruz Avenue Branch in Menlo Park.

16. On September 10 & 11, 2007, Beeler received multiple confirmations from Bank of America that the checks for $308,125.00 and $557,910.00 had cleared.

17. Plaintiffs are informed and believe and on that basis allege that Bank of America finally settled and paid the checks for $185,220.00, $308,125.00, and $557,910.00. Because the Bank finally settled and paid these checks, plaintiffs were entitled to credits for them in their accounts.

18. Each of these checks was drawn by another Bank of America customer on another account at the Bank. Such a transaction is commonly referred to as an "on us" transaction. Because Bank has immediate access to its own data and records establishing all balances and other information needed to clear and complete on us transactions, the Bank does not rely on any inter-bank confirmation or clearing mechanism to process on us items.

19. The Bank finally paid and settled the three on us checks by:
    a. orally and electronically confirming to Beeler that these checks had cleared;
    b. issuing the $175,000.00 cashier's check to Beeler;

FIRST AMENDED COMPLAINT -3-

1         c.      verifying that there were sufficient funds in the drawer's Bank of America account
2 to cover each of these checks and communicating that verification to Beeler;

3         d.      failing to return checks to Beeler in compliance with law;

4         e.      failing to exercise any revocation rights the Bank had within the time required by
5 law, to the extent Bank may only conditionally have settled or paid these items and had any such
6 right of revocation; and

7         f.      other actions and failures to act rendering the payment and settlement of these
8 checks final.

9       20.      On September 11, 2007, an employee of the Bank informed Beeler that Bank of
10 America was closing his accounts.

11       21.      Beeler was surprised and concerned.  The same bank employee put Beeler in
12 touch with Christina Nguyen, a manager at the Sharon Heights Bank of America branch in Menlo
13 Park.

14       22.      Beeler then drove to Sharon Heights to speak with Nguyen.  Beeler summarized
15 his transactions with the Bank for her.  She confirmed that the Bank was closing his accounts but
16 did not explain why.  She said that she would try to convince the Bank not to close his accounts,
17 but that he had to put funds back into the accounts that day in order to make the $175,000.00
18 cashier's check good.   She warned him that he had to do this or there would be adverse personal
19 consequences for his credit and reputation as a banking customer.

20       23.      Unbeknownst to Beeler at that time, Bank of America had stopped payment on the
21 $175,000.00 cashier's check.  This caused Silicon Valley Bank to reject the cashier's check, and
22 Bank of America never paid it.

23       24.      Unsettled by Nguyen's warnings and wanting to exercise good faith and
24 responsibility in this situation, Beeler returned to the Sharon Heights branch later that same day,
25 September 11, and provided Nguyen a Silicon Valley Bank cashier's check for $160,000.00.

26       25.      Bank of America negotiated this $160,000.00 cashier's check and received the full
27 amount of this check from Silicon Valley Bank.

28       26.      Bank of America consolidated all three of plaintiffs' accounts.  As of September

FIRST AMENDED COMPLAINT    -4-

11, 2007, plaintiffs had deposited a total of $195,000.00 in certified funds in the three Bank of America accounts. Except for the $175,000.00 cashier's check that Bank of America refused to pay, plaintiffs made no withdrawals from these accounts. In addition to the $195,000.00 in certified funds, the on us checks Beeler deposited in the Bank of America accounts totaled $1,051,255.00, bringing the total deposited items to $1,246,255.00.

27. Sometime in late September 2007, the Bank mailed Beeler "a Check representing the balance" on plaintiffs' three accounts of $19,930.11 as settlement of the accounts.

28. Plaintiffs then attempted to resolve their dispute and claims with the Bank informally and without litigation, but the Bank refused to do so.

## FIRST CLAIM

Claim for Violations of the Uniform Commercial Code

29. Plaintiffs fully incorporate the preceding allegations by reference in this claim.

30. By acting and failing to act as alleged above, Bank of America failed to comply with the requirements of Division 4 of the California Commercial Code, including but not limited to sections 4215 and 4301, and failed to exercise ordinary care and failing to act in good faith as required by Commercial Code section 4103, in paying, processing, and crediting the checks relating to plaintiffs' accounts.

31. Notwithstanding the Bank's final payment and settlement of the checks as alleged above, Bank of America:

    a. On information and belief, reversed credits to plaintiffs' accounts for deposited on us checks that the Bank had previously confirmed had cleared;

    b. On information and belief, reversed, or in the alternative failed to apply, credits to plaintiffs' accounts for deposited on us checks for which the Bank confirmed that there were sufficient funds in the drawer's account;

    c. Illegally placed holds on certified checks deposited to plaintiffs' accounts;

    d. Wrongfully stopped payment and refused to pay the Bank's $175,000.00 cashier's check;

    e. Concealed from Beeler that the Bank had stopped payment on the $175,000.00

1  cashier's check, while falsely and in bad faith representing to him that the Bank had in fact paid
2  the cashier's check by asking him to make the cashier's check good, thereby inducing him to
3  deposit another $160,000.00 into the accounts; and

4      f.    Returned a mere $19,930.11 against deposits of certified funds totaling
5  $195,000.00 and deposits net of the $175,000.00 cashier's check totaling $1,071,255.00, when
6  there were no other debits except miscellaneous fees and items totaling $69.89.

7      32.    As a direct and proximate result of these violations, plaintiffs have been damaged
8  in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will prove at trial,
9  including but not limited to:

10     a.    funds on deposit in their Bank of America accounts that plaintiffs own and to
11 which they are entitled by law;

12     b.    loss of interest and opportunity on such deposits;

13     c.    funds represented by the $175,000 cashier's check that plaintiffs own and to
14 which they are entitled by law;

15     d.    loss of interest and opportunity on the funds represented by the $175,000.00
16 cashier's check;

17     e.    attorney's fees and costs and expenses of litigation in order to recover the deposits
18 and other funds that plaintiffs own and to which they are entitled by law;

19     f.    incidental, consequential, and other damages as plaintiffs will prove at trial.

20     33.    As a direct and proximate result of these violations, plaintiffs have been damaged
21 in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will prove at trial,
22 as more particularly alleged above.

23 <center>SECOND CLAIM</center>
24 <center>Common Law Conversion</center>

25     34.    Plaintiffs fully incorporate the preceding allegations by reference in this claim.

26     35.    Plaintiffs were the owners of, had title to, and had the right to immediate
27 possession of and control over specifically identifiable sums of money in the form of the three on
28 us checks plaintiffs deposited to their Bank of America accounts and the $175,000.00 cashier's

FIRST AMENDED COMPLAINT    -6-

1 check.

2     36.    Bank of America converted plaintiffs' property by wrongfully exercising dominion and control over and actually interfering with plaintiffs' ownership of and right to possession of the sums of money on deposit in their accounts. The Bank did so by acting and omitting to act as alleged above, by denying and/or reversing the credits to plaintiffs' accounts for the three on us checks, by refusing to pay plaintiffs the true and correct balances on their accounts upon account closing, and by stopping payment on the $175,000.00 cashier's check.

    37.    Bank of America violated California Commercial Code section 3411(b) by wrongfully refusing to pay the cashier's check.

    38.    Plaintiffs have made due demand on the Bank for the return of their property and by service of this complaint again demand return of their property.

    39.    As a direct and proximate result of the Bank's conversion, plaintiffs have been damaged in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will prove at trial, as more particularly alleged above, including but not limited to attorney's fees and costs and expenses of litigation in order to recover the deposits and other funds that plaintiffs own and to which they are entitled by law.

    40.    Bank of America acted fraudulently, maliciously, and oppressively and should be assessed punitive damages.

## THIRD CLAIM

Breach of Contract and Implied Covenant of Good Faith

    41.    Plaintiffs fully incorporate the preceding allegations by reference in this claim.

    42.    On September 4, 2007, plaintiffs and the Bank of America entered a contractual depositor-bank relationship.

    43.    Bank of America orally and expressly agreed to clear checks from other Bank of America accounts in one day if there was a sufficient balance to pay the check in the drawer's account. This term became part of the contact.

    44.    A covenant of good faith and fair dealing was implied in the contract, under which Bank of America agreed to act in good faith, honestly, and fairly in paying, processing, and

FIRST AMENDED COMPLAINT     -7-

1  crediting the checks relating to plaintiffs' Bank of America accounts.

2      45.    Plaintiffs have timely and duly complied with all conditions precedent required by
3  the contract.

4      46.    By acting and failing to act as alleged above, Bank of America breached the
5  contract by reversing, or in the alternative failing and refusing to apply, credits for checks from
6  other Bank of America accounts in one day when there was a sufficient balance to pay the check
7  in the drawer's account.

8      47.    By acting and failing to act as alleged above, Bank of America otherwise failed to
9  act in good faith in paying, processing, and crediting the checks relating to plaintiffs' accounts,
10  including the $175,000.00 cashier's check.

11      48.    As a direct and proximate result of these breaches of contract, plaintiffs have been
12  damaged in an amount in excess of $1,000,000.00 and such further amounts as plaintiffs will
13  prove at trial, as more particularly alleged above.

14  <div align="center">FOURTH CLAIM</div>
15  <div align="center">By Plaintiff Beeler Only</div>
16  <div align="center">Violations of the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*)</div>

17      49.    Plaintiffs fully incorporate the preceding allegations by reference in this claim.

18      50.    Beeler opened his account with Bank of America for personal, family, and
19  household purposes.

20      51.    Bank of America agreed to provide Beeler banking and deposit services in
21  connection with his account.

22      52.    Beeler has suffered damage as a result of Bank of America's violations of the
23  California Consumer Legal Remedies Act (the "CLRA") alleged below by expending time and
24  incurring other transaction costs to avoid the consequences of these violations, including but not
25  limited to paying an attorney to contact the Bank and discuss Beeler's account in an effort to
26  resolve these claims with the Bank before filing this action.

27      53.    Bank of America has violated and continues to violate the CLRA by using
28  deceptive representations in connection with these services; misrepresenting that these services

FIRST AMENDED COMPLAINT    -8-

have characteristics, uses, and benefits that they do not have; by advertising its services with intent not to sell them as advertised; and by misrepresenting that transactions confer or involve rights, remedies, or obligations which they do not have or involve, or which are prohibited by law.

54. Bank of America has committed and continues to violate the CLRA by the acts and omissions alleged above and specifically including but not limited to:

a. misrepresenting that the Bank will clear on us checks drawn on other Bank of America accounts in one day if there is a sufficient balance to pay the check in the drawer's account, when in fact the Bank does not clear on us checks within one day when there is a sufficient balance in the drawer's account;

b. misrepresenting on online banking screens, and otherwise, that the checks plaintiff and other customers deposit in their accounts have "cleared," when in fact the Bank has not cleared such checks and in fact has charged them back against the customer's account;

c. stopping payment on and wrongfully refusing to pay cashier's checks;

d. issuing customers deposit hold notices, and placing holds, delaying the availability of deposited funds based on "reasonable cause to doubt collectibility," when in fact the deposited funds are cashier's checks and fully collectible;

e. sending returned item notices to customers stating that on us checks are being "returned to the Bank of America" unpaid, when in fact there were sufficient funds in the drawers' Bank of America accounts to pay the checks;

f. in violation of California Civil Code sections 1770(a)(19), threatening to enforce and enforcing against Beeler the following illegal and/or unconscionable provisions that the Bank claims are contained in its Account Agreement with Beeler, and/or attempting to secure a waiver of statutory rights as follows: (1) the Bank's assertion that under its Account Agreement, the Bank may accept the return of a deposited check at any time and for any reason, and may charge the deposited item back against the account, regardless of whether the payor bank has finally paid the item, complied with its "midnight deadline" under the Uniform Commercial Code and Federal Reserve Board Regulation CC, and/or has any lawful basis for returning the check; and

(2) the Bank's assertion that under the Account Agreement the Bank is exculpated from all liability to the customer for any action or inaction to recover payment of a returned item; and

  f.  otherwise as will be shown at trial.

55. The Bank's Account Agreement with Beeler is a contract of adhesion in a consumer setting. The Account Agreement is a form contract prepared exclusively by the Bank. It is pre-printed, densely worded, and prolix. It is in small print and lengthy, technical, and extremely difficult to read and understand.

56. The Bank presented the Account Agreement to Beeler on a take it or leave it basis. The Bank has disproportionate bargaining power vis-a-vis its customers and dictates the terms of its Account Agreements. The Bank allows no opportunity for negotiation. The customer must consent to all terms specified in the agreements in order to open an account with the Bank.

57. The "returned items" provisions that the Bank claims are included in its Account Agreement with Beeler are substantively unconscionable. A payor bank's "midnight deadline" for paying or returning checks has long been established in commercial law to promote certainty and fairness in the banking system. The Uniform Commercial Code and Federal Reserve Board Regulation CC impose the midnight deadline on banks for returning checks, including but not necessarily limited to California Commercial Code sections 4215 and 4301 and 12 C.F.R. § 229.30(c).

58. The purpose and effect of the Bank's claimed "returned item" provisions in its Account Agreement with Beeler are to abolish the deadline for returning checks without any limitation on the time within returned items may be charged back against the account, and without any limitation on the lawfulness of the reasons for the returns. This open-ended extension of the check return deadlines and other customer rights contained in the Uniform Commercial Code and Federal Reserve Board Regulation CC imposes overly harsh and one-sided terms.

59. Beeler seeks orders enjoining these violations of the CLRA and awarding him attorney's fees, costs and expenses as allowed by law.

FIRST AMENDED COMPLAINT   -10-

## FIFTH CLAIM

By Plaintiff Beeler Only

Declaratory Relief Under California Civil Code § 1060

60. Plaintiff Beeler fully incorporates the preceding allegations by reference in this claim.

61. An actual controversy has arisen between Beeler, on the one hand, and Bank of America, on the other, relating to their respective legal rights and duties under the provisions of the Account Agreement between them.

62. Plaintiff contends as follows:

a. The provisions in the Account Agreement relating to "returned items" do not apply to checks returns by the Bank itself, where no other bank is the payor bank;

b. To the extent that the provisions in the Account Agreement relating to "returned items" apply to checks returns by the Bank itself, where no other bank is the payor bank, the provision is unconscionable and unenforceable in violation of Civil Code section 1670.5; and

c. To the extent that the provisions in the Account Agreement relating to "returned items" do apply to checks returns by the Bank itself, where no other bank is the payor bank, the provision is an illegal and unenforceable exculpatory contract in violation of Civil Code sections 1668 and 3513 and violates California Commercial Code sections 4103, 4215, and 4301 and Federal Reserve Board Regulation CC.

63. The Bank disputes Beeler's contentions.

64. Beeler requests that the Court issue a declaration of the parties' rights and duties under the Account Agreement and make a binding declaration of these rights and duties.

65. Declaratory relief is necessary and proper under the circumstances. This Court should exercise discretion to grant declaratory relief because the same "returned item" provisions appear in the outstanding Account Agreements of thousands of other Bank of America California customers. By clarifying and providing judicial guidance regarding the interpretation and enforceability of these provisions under California law, this Court's declaratory judgment will serve the interests of justice.

RELIEF SOUGHT

66. A money award in favor of plaintiffs against Bank of America for an amount exceeding $1,000,000.00 as compensatory relief against Bank of America on account of the damages alleged above, including prejudgment interest.

67. A further money award in favor of plaintiffs against Bank of America on account of punitive damages.

68. A further money award in favor of plaintiffs against Bank of America on their attorney's fees, expenses, and costs of suit in this action.

69. An order enjoining Bank of America from continuing to violate the CLRA as alleged above.

70. A declaration of rights and duties under the Account Agreement as requested above.

71. Leave to amend this Complaint to state plaintiffs' claims more fully.

72. Other and further relief as is just and proper.

LEVY, RAM & OLSON LLP

DATED: February __, 2009     by: _____
Arthur D. Levy
Attorneys for Plaintiffs
CHARLES BEELER and REX VENTURES, LLC

F:\Docs\1122-01\Pleadings\Complaint Amended.doc

FIRST AMENDED COMPLAINT                                                                         -12-